

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-2006

# In Re: Bernea Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4356

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Bernea Smith " (2006). *2006 Decisions.* Paper 1711.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1711

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-4356

———————

In Re: BERNEA SMITH,

Debtor

FRIEDMAN & ASSOCIATES,

Appellant

v.

DEBORAH DEL NOBILE TANENBAUM
BERNEA SMITH; ALLSTATE INDEMNITY COMPANY

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 02-cv-02354)
District Judge: Honorable Anne E. Thompson

———————

Argued September 11, 2003

Before: ALITO, BARRY and AMBRO, <u>Circuit Judges</u>

(Opinion filed: January 27, 2006)

Paul J. Maselli, Esquire (Argued)
Maselli, Warren & Lanciano
600 Alexander Road
Princeton, NJ  08540

*Attorney for Appellant*

Jay L. Lubetkin, Esquire
Henry M. Karwowski, Esquire (Argued)
Shoshana Schiff, Esquire
Booker Rabinowitz Trenk
Lubetkin Tully DiPasquale & Webster
100 Executive Drive, Suite 100
West Orange, NJ  07052

     *Attorneys for Appellee*

---

OPINION

---

AMBRO, Circuit Judge

Chapter 7 bankruptcy liquidations are intended to clear accumulated claims to permit debtors a fresh start.  Some claims linger longer than anyone could anticipate, in part because determining the validity of the claim yo-yos through layers of appeals.  This is such a case.  Involving a claim for an attorney's lien, this appeal has already been the subject of three Bankruptcy Court and two District Court opinions.  For the reasons stated, we affirm.

## I.  Facts and Procedural History

Bernea Smith filed a voluntary *pro se* petition under Chapter 7 of the United States Bankruptcy Code on December 28, 1998.  Smith did not disclose as an asset of her estate an action against her insurance carrier, Allstate Indemnity Company, to recover an underinsured motorist claim for injuries from an automobile accident.  Friedman &

Associates[1] represented Smith in that personal injury action. Friedman alleges he was not informed by Smith of her bankruptcy filing. In any event, shortly after her Chapter 7 filing, Smith settled with Allstate for the policy limit of $85,000. When payment occurred one month later, approximately $26,000 of the settlement went to Friedman pursuant to a pre-petition contingency fee agreement. This post-petition settlement and payment also were not disclosed timely to the Bankruptcy Court, and thus they were consummated without its required approval.

As a result of her questioning of Smith at the first meeting of creditors, the Trustee requested information of Friedman (principally about a matter unrelated to the Allstate automobile accident claim) that ultimately led her to suspect a failure to disclose assets. When Friedman proved uncooperative,[2] the Trustee issued a subpoena to his firm for all files relating to Smith. Friedman did not move to quash the subpoena, but instead his office sent to the Trustee a letter indicating Smith's desire to dismiss her bankruptcy case, though one day later Friedman produced Smith's files to the Trustee. That file revealed the June 1995 automobile accident resulting in litigation in which Friedman's firm had represented Smith in her personal injury action. Friedman subsequently revealed as well

---

[1]We are informed the firm has since disbanded, and its claim we presume resides with Friedman himself. Hence we refer to him alone.

[2]Friedman's office, in response to a letter from the Trustee requesting information about claims Smith may have, merely responded that "Mrs. Smith's workers' compensation cases are pending." Friedman's brief to us claims that his office was unaware that Smith had filed for bankruptcy, this despite the fact that the letter of the Trustee to Friedman's office would leave little doubt.

that (i) in January 1999 (after Smith had filed the previous month for Chapter 7 protection), she agreed to settle the personal injury action for the payment by Allstate of $85,000, and (ii) in February 1999 Friedman's firm received and disbursed the proceeds of the settlement ($56,367.92[3] to Smith and $26,383.96 to Friedman's firm pursuant to the contingency fee agreement).[4]

As a result of all this, in January 2000 the Trustee brought an action in the Bankruptcy Court against Smith, Friedman, and Allstate. She sought, among other things, to void the settlement as a post-petition act lacking Court approval and to order Friedman to pay to Smith's bankruptcy estate all fees his firm received from the settlement.

The Trustee moved for summary judgment. The Bankruptcy Court (per Judge Kathryn C. Ferguson) entered an order on June 20, 2000, granting the Trustee's motion, thereby voiding the settlement and ordering Friedman to disgorge within three days to Allstate[5] the settlement proceeds he received.

---

[3]At her continued meeting of creditors in August 1999, Smith acknowledged that she had spent the majority of her portion of the settlement proceeds.

[4]These sums leave an unexplained gap of approximately $2,250.

[5]The Court did this deliberately, as in its Order it crossed out "the Trustee" and inserted in the Judge's own hand "Allstate Insurance Co." Presumably the reason the Court did this was because the Trustee sought to void the settlement rather than to order that the monies be paid to Smith's bankruptcy estate. While this makes little sense (remember, $85,000 was the policy limit and it had already been paid out), perhaps (and we can only speculate) the reason was that Smith had already dissipated most of the settlement proceeds paid to her, and the Trustee somehow thought that voiding the settlement made Allstate liable yet again for the sum.

Despite this, the procedural "fun" had hardly begun. Rather than turning over to Allstate his portion of the settlement proceeds, Friedman filed a counterclaim on June 26, 2000, seeking a declaration that he possessed a "statutory and common law lien in the attorney file and in the proceeds of the claim of Ms. Smith to the extent of the percentage of Friedman's contingency fee." This was followed a few days later by a motion for reconsideration of the June 20 order granting summary judgment in favor of the Trustee.[6] In early September 2000 the Bankruptcy Court denied Friedman's motion for reconsideration and again ordered his firm to disgorge immediately its portion of the settlement proceeds. It is no surprise that Friedman had yet to do so.[7]

In February 2001 the Trustee filed a motion for summary judgment with respect to Friedman's counterclaim. The Bankruptcy Court (this time through Judge Stephen A. Stripp) ruled in favor of Friedman by holding that he had a "valid, first priority lien against the estate's cause of action against [Allstate] presently pending in the Superior Court of New Jersey . . . ."

Did this end matters? Of course not. After a motion for reconsideration by the

---

[6]Allstate soon thereafter joined the parade by filing a cross-motion for enforcement of the order compelling disgorgement.

[7]To complicate this state of affairs, the Trustee determined that Friedman had a conflict and could no longer pursue the personal injury action on behalf of Smith against Allstate. At the Trustee's request the Bankruptcy Court entered a order authorizing the retention of Baer, Arbeiter, Ploshnick, Tanenbaum & Weiss as the Trustee's special litigation counsel in Smith's personal injury action. As nothing can be simple in this case, the Tanenbaum in this firm is the husband of the Trustee.

Trustee was denied, she appealed to the District Court. The Court in January 2002 entered an order remanding the matter to the Bankruptcy Court "because of the failure to give [the Trustee] notice and the opportunity to respond before the grant of summary judgment to [Friedman]."

Back in the Bankruptcy Court, Judge Ferguson again presided. Friedman filed a motion for summary judgment on his counterclaim, relying on the argument that Judge Stripp's decision constituted the "law of the case." Not missing a beat, the Trustee cross-moved for partial summary judgment in her favor. The Bankruptcy Court in March 2002 granted the Trustee's motion and denied that of Friedman. Judge Ferguson concluded that she was not constrained by the law-of-the-case doctrine[8] because an exception to that doctrine applied—that the decision of Judge Stripp was clearly erroneous. She then proceeded to hold that Friedman did not have a valid common law retaining lien or a statutory attorney's lien (also known as a charging lien).

It was now Friedman's time to appeal to the District Court, and he did so. Interestingly, Friedman argued first that the June 2000 order of Judge Ferguson erred by voiding the settlement with Allstate and requiring him to disgorge his portion of the settlement proceeds to Allstate. He, of course, also appealed from Judge Ferguson's March 2002 decision denying him either a common law or a statutory lien on the

---

[8]As Judge Ferguson noted, this means that "when a court decides upon a rule of law, the decision should continue to govern the same issues in subsequent stages in the same case."

bankruptcy estate's cause of action on those settlement proceeds he now holds.

After briefing and oral argument, the District Court ruled as follows.

(1) The Bankruptcy Court did not err in its June 20, 2000 order when it granted the Trustee's motion to overturn the post-petition settlement between Smith and Allstate for her pre-petition personal injury and ordered Friedman to disgorge to Allstate the settlement proceeds he was holding.

(2) The Bankruptcy Court also did not err in its March 4, 2002 determination that Friedman did not have either a common law or a statutory lien against (presumably) the proceeds of the settlement or the proceeds of the claim of Smith against Allstate. As for the settlement, it was now void. As for the lien claimed pertaining to Smith's still-extant claim, Friedman, by transferring Smith's files to the Trustee upon her demand, forfeited the right to assert a common law retaining lien because his transfer was nonetheless "voluntary." A valid statutory lien did not exist because "Friedman had not taken steps to perfect [his] lien pre-petition."

(3) The Court added that it would be inequitable "to conclude that an attorney who performs the settlement of his . . . client's case post-petition without the knowledge of the Trustee . . . retains a lien in the future proceeds of the claim."

To recap, we have three Bankruptcy Court decisions (June 2000 and March 2002 of Judge Ferguson sandwiching a June 2001 decision of Judge Stripp) and two District Court opinions dealing with the approximately $26,000 that an attorney claims he has as a lien for his services. In addition to differing interpretations of New Jersey law pertaining

7

to statutory and common law attorney's liens, we are visited with procedural issues involving, *inter alia*, what Friedman's appeal covers and the law of the case.

## II. Discussion

Friedman's principal argument is that he has a valid perfected statutory and common law lien with respect to the proceeds of Smith's cause of action against Allstate and, so far as we can glean, a common law lien in Smith's files involving the Allstate claim even though he relinquished control of them. He appends to these arguments a perfunctory contention that Judge Ferguson somehow entered summary judgment *sua sponte* in favor of Allstate and against Friedman when she ordered disgorgement of Friedman's attorney's fees to Allstate in June 2000 even though Allstate had not moved for summary judgment. He also argues that Judge Ferguson's March 2002 decision violated the law-of-the-case doctrine when she granted summary judgment to the Trustee after Judge Stripp had already denied summary judgment on the same issue. For the reasons noted below, resolution of the latter two issues makes unnecessary any decision on the merits.

### A.      Appeal from the June 20, 2000 Order

As to the June 20, 2000 order, the Trustee contends that our Court has no jurisdiction over the appeal from it, as Federal Rule of Bankruptcy Procedure 8002(a) provides, *inter alia*, that a "notice of appeal shall be filed . . . within 10 days of the date of the entry of the . . . order . . . appealed from." As Friedman did not file an appeal of the June 2000 order until nearly two years later, it is barred. Friedman replies that he was not

8

bound by the jurisdictional 10-day appeal requirement of Bankruptcy Rule 8002(a) because the June 2000 order of Judge Ferguson was merely interlocutory, as the Court did not address Friedman's counterclaim.

The order entered in June 2000 was in response to a motion for partial summary judgment of the Trustee seeking, *inter alia*, disgorgement of the settlement proceeds Friedman was holding. The Bankruptcy Court's order reflected its judgment that the Allstate settlement was void. Because the settlement was void, disgorgement of Friedman's fees was simply an attempt to restore the *status quo* prior to the settlement being implemented. That included the give-back by Friedman of the monies he held. Not timely appealing this order, once it became final after Friedman's motion for reconsideration was denied, arguably was fatal to challenging Judge Ferguson's disgorgement decision (which, to repeat, had only a three-day window to comply).

But even if the Bankruptcy Court's order was interlocutory (and thus not appealable, absent an exception, until it became final), it would make no difference to the ultimate outcome. Friedman argues preliminarily that the Bankruptcy Court's order that he return the $26,000 in attorney's fees to Allstate was a grant of summary judgment *sua sponte* in favor of Allstate. The Bankruptcy Court, of course, did not grant summary judgment in favor of Allstate, as all Allstate had before the Court was an inchoate cross-claim for indemnification if it were to be found liable for anything that would even trigger a right to indemnification (and that never occurred). Rather, it appears that the disgorgement of fees back to Allstate was part of the Bankruptcy Court's judgment that

9

the Allstate settlement was void. The entire $85,000 had to be returned to Allstate, as a matter of logic, to restore the *status quo ante*. This includes, of course, the monies Friedman held. In this context, Friedman's procedural argument as to the improvident grant of summary judgment fails, and we affirm (to the extent we have jurisdiction) the District Court's affirmance of the Bankruptcy Court's June 20, 2000 order.

## B. Appeal from the March 2002 Order

This leaves Friedman's counterclaim, filed on June 26, 2000, that he has a lien on the settlement proceeds he holds and the files he turned over to the Trustee. This was ruled on both by Judge Stripp in 2001 and by Judge Ferguson in March 2002. It is here that the Trustee interposes another procedural bar to Friedman's appeal—that he waived before Judge Ferguson the making of any substantive argument in favor of his assertion of any attorney's lien.

The context is this. After the first District Court decision that vacated Judge Stripp's decision granting summary judgment in favor of Friedman as to attorney's liens because Judge Stripp entered his decision *sua sponte* (thus improperly), the case was remanded to the Bankruptcy Court. The parties appeared—this time before Judge Ferguson—and the only argument Friedman made to the Trustee's motion for summary judgment was that Judge Stripp's decision was the law of the case. As an exception to the law-of-the-case doctrine is whether the decision purported to be law of the case is clearly wrong and would be manifestly unjust, *see Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir. 1984) (citing *Arizona v. California*, 460 U.S. 605, 619 n.8 (1983)), Judge Ferguson

10

decided that Judge Stripp had indeed erred and entered summary judgment on the merits of the attorney's lien claims in favor of the Trustee.

Prudence would have counseled Friedman to argue the merits before Judge Ferguson as a back-up to his procedural, law-of-the-case argument. Moreover, as the District Court had remanded Judge Stripp's ruling "because of the failure to give [the Trustee] notice and the opportunity to respond before the grant of summary judgment to [Friedman],"[9] there can be little (if any) doubt that the "slate was wiped clean" as to any pronouncement by Judge Stripp on the merits. The parties were starting over at the summary judgment stage on attorney's lien issues. The Court—this time with Judge Ferguson back presiding—was free to reverse itself now that it had the benefit of the Trustee's response. The law-of-the-case doctrine was not in play, and Friedman's decision to rest solely on that argument waived whatever substantive contentions he could have made. Thus we need not decide whether he had a valid lien—statutory or common law—on Smith's personal injury cause of action.[10]

---

[9]The order mistakenly said "appellant" (the Trustee) when it meant "appellee" (Friedman).

[10]Even were Friedman to have either or both a statutory or common law attorney's lien, we reiterate that the District Court "decline[d] to conclude that an attorney who performs the settlement of his . . . client's case post-petition without the knowledge of the Trustee . . . retains a lien in the future proceeds of the claim." While we do not decide this issue, we note that the fact mentioned—combined with the initial failure to disclose the settlement, the failure to seek and obtain Bankruptcy Court approval of the settlement, and the attempt to dismiss the bankruptcy when inquiry was made about the status of Smith's possible claims against others—make this an inviting case for a court to exercise its equitable authority to preclude any attorney's lien from being enforced (or at least

\* \* \* \* \*

For these reasons (and thus without commenting or ruling on the merits of the attorney's lien issues), we affirm the District Court's October 31, 2002 order.

subordinate equitably any valid claim Friedman may have had).

12